Welcome to the Ninth Circuit. As you can see, I am here alone today because of travel problems and other issues. So Judge Graber and Judge Wallace are both appearing by telephone, but they are going to be actively involved. Can you both hear me? Yes, thank you. Okay. And I am filling in for Judge Graber as presiding judge, just so there's someone sitting here in the middle. In any event, we will start with Ms. Gilbride. And you may save time, but you'll have to watch your own time. I'm sorry? I'm set, thanks. Okay. Good morning, Your Honors. Eileen Gilbride for the defendants' appellants in this case. Our briefs have fully set forth our positions. I plan to hit a few high points and hope to reserve a few minutes, perhaps five minutes, for rebuttal. I think we can dispose of the non-jural entity issue rather quickly. We have no dispute on the law. MCSO is not a jural entity, and judgment should not have been entered against it. We preserve the issue. We haven't waived it. And unless there are questions on that issue, we just request the Court to vacate the judgment against the MCSO. But it makes no difference. It makes no practical difference because Sheriff Arpaio is sued in his official capacity. But MCSO shouldn't have a judgment against it. I don't know. I do have a question. And I know you'd like to skip to the other issues, but it's a rather strange issue that the Intermediate Court of Arizona didn't help us much with. I didn't see any analysis to tell me what a non-jural organization is under Arizona law. The judge just counted the noses of district court judges and went that way. But what is your interpretation of non-jural? Is this something that's a personal privilege? Is it something that's dealing with the Eleventh Amendment? What is it under Arizona law? It just – it's an entity that does not exist in and of itself aside from the county, which the legislature gives – But the county was dismissed earlier in the case. I'm sorry. I missed that. The county was dismissed earlier in this case on a theory that it wasn't necessary. So now we have this kind of circle. If we needed – so I assume if we needed for some reason down the line Maricopa County back in, it would come back in or it would be brought back in. And that's what the district judge asked. And we said that was not necessary since Sheriff Arpaio is in the case in his official capacity, which is the same thing sort of – is a practical matter. Yeah. But that's not what you're asking. You're asking us to dismiss the whole case. Just against the M.C. You're not saying it's just impractical. You want us to dismiss the case. Clearly, if there was something there, it was waived when you failed to bring it up for the first time. We made it perfectly clear in our opinion that these issues that are intertwined can be handled there at that time and they're properly before us and should be brought before us. I don't know where we end up on this. You want to say it doesn't make any difference, but you want us to commit the act of dismissing. Just dismiss the M.C.S.O. Just tell us what you really want. That is what I want, to dismiss, to vacate the judgment, not to dismiss the case, but to vacate the judgment against the M.C.S.O., which is not a juror entity. There just shouldn't be a judge. Isn't this a little like Hills? It looks like to me that you're playing both sides along the way, and Judge Panner pointed out very carefully in his opinion for our court that that just isn't the way lawyers should carry out litigation. Aren't you coming pretty close to being within Hills? I'm not sure which case that is, Your Honor, at this point, but we did raise the issue. We've moved to dismiss. The motion was denied. We can't appeal from the denial of a motion to dismiss. It didn't have anything to do with the preliminary injunction issue, and so we've preserved it and we haven't waived it, and it's improper. Counsel, as it reaches us now, you're not asking for dismissal of the case. Correct. And you're not asking on this ground that the injunction be dissolved. That's correct. You're only asking for essentially, I hate to use the word, but a technicality of taking MCSO off the list of those who are bound by the injunction. Is there an end? That's correct. I understand you to be representing that assuming we were to allow the injunction to continue, that we were to affirm, you would raise no argument that the underlings of the sheriff's office are not bound by the judgment? That's correct. Is that correct? That's correct. That's correct. And hopefully they're not. So what you're really saying is it's the wrong party. The county is the real party, and the sheriff's office is just an office of the county? Right. Well, the sheriff in his official capacity is the correct party, and he is a party. With that, I'd like to ---- If I may ask one other question sort of as a preliminary matter, do I understand correctly that you have abandoned the First Amendment challenge? That's correct, because after ---- Okay. That's correct. The First Amendment and the community outreach issue, because after the district judge had a look at our opening brief, he modified the injunction to eliminate those provisions, basically. So what specifically? I understand that your position on the main issue still remaining is that there is a distinction between saturation patrols and regular patrols, and that we can reach one before the other. And for the sake of this question, I'd like you to assume that we do not agree with your position on that. Is there anything else about the injunction specifically that you contend is improper or overbroad or not supported by evidence except for the overarching issue of regular versus saturation? Yes. That gets to the overbreadth argument, which there are ---- What specifically is overbroad? Here's what specifically overbroad. To reinforce it, that's not linked to this. Yeah. Correct. Not linked to the distinction between regular patrols and saturation or immigration patrols. It tells, for example, supervisors when they must attend an arrest and what information they must discuss with their deputies, not limited to discrimination issues. It requires all personnel to report another for intentionally providing false information, even though that was not an issue and never proved or even alleged in this case. All complaints and administrative investigations, not just discrimination claims, must be forwarded to the monitor and plaintiff's counsel. Defendants must collect all misconduct complaints or allegations, all internal investigations of alleged or suspected misconduct, all criminal, civil, and administrative claims regarding patrol operations, all disciplinary actions against all employees ---- Regarding patrol operations means what? Is patrol limited to ---- Patrol operations means the whole patrol division as far as I understand it. Patrol meaning not the jail operations and not something else, but the entire patrol function. All disciplinary actions against all employees and all training history for all employees, none of it limited to discrimination-related issues, let alone narrowly tailored Well, the case isn't limited to discrimination-related issues. It's also related to, it also concerns immigration inquiries that are for civil immigration violations. The case is not limited to discrimination, right? I think it is. Oh, it is? It's limited. I thought a big chunk of the case is about the fact that the sheriff's office has maintained that it may, that it can enforce against people who are illegally here and arrest and detain them without regard when they don't have that authority. That is a part of the case, and the, and the, and it's linked to detaining Latinos specifically. Well, no, it isn't linked to. My understanding is there are two pieces here. One of them, which was mainly the subject of our earlier opinion, is the asserted authority, which is not consistent with legal, which I'm not sure you agree is not police and sheriff's offices to enforce the immigration laws with regard to illegal presence in this country. Correct. Correct. And I don't take issue with that. Right. But, but none of this, and I have more on my list of what's overbroad. In addition, and I'll get back to this in a second. Well, the, I mean, whether it's overbroad or not overbroad, presumably, in other words, the question is, is this per se overbroad or do we just need further explanation for why the judge thought he needed this? I mean, there are, when you have injunctions of this kind, there are prophylactic provisions that may be valid as the case develops if other things aren't working. And to some degree, that's what was going on here. I mean, certainly he had a preliminary injunction. It was being violated, he found. And so that gave some more room for a broader injunction. And the question is whether if he were to, for example, find that there were further problems with compliance, he may have more authority in order to preclude in order to be able to actually have, know what was really going on. I mean, for example, if you say you only have to have to provide certain disciplinary proceedings, then there's the question of how do you know whether you're actually giving all of the ones that you're supposed to give. So if you thought there was a problem with whether you were giving the ones you're supposed to give, then you might have a broader rule that said you have to give all of them. And so that's a question of whether you're giving them all. Well, we're here, though, Your Honor, on an injunction against a State agency which is subject to especially rigorous control and especially rigorous standards. We are not here – I mean, we still have to have an injunction that is narrowly tailored to redress the violation. And so the question is, what the judge finds and how he links whatever the provisions are to the violations he found. But it can't – with all due respect, it can't be that all complaints and administrative investigations must be forwarded to the monitor and the – Well, if he were to determine, for example, maybe not on the existing record but on certain kinds of disciplinary proceedings and others was one which either doesn't have any internal governance or isn't possible to be overseen, then it would be okay, I presume. But there's nothing in this record on that, though. There's nothing on this record that would support this kind of the broad brush that basically turns the court not into an institution that remedies constitutional violations but which broadly shapes governmental agencies to be constitutionally compliant. And Lewis v. Casey teaches us that that's not what courts are supposed to do. We're supposed to limit and narrowly tailor injunctions to the proven constitutional violation. That, you know, we agree with the saturation patrols and the injunction that applies to that. It's been true, though, for a very long time, and not only in these sorts of institutional injunctions. Take, for example, violence around abortion clinics. Right? The first injunction might say, you know, don't have any violence. And then if they're continuing to have violence, you can have a rule that said you can't go near the clinic. Right? I mean, or you can't go a certain distance from the clinic. That's what the surveys of Supreme Court cases were about. But in this particular case, we're not even narrowly tailored to immigration or discrimination issues. They're entitled to the monitor is entitled to delve into all of the MCSO's operations that have nothing to do with discrimination or immigration. That's overbroad. So let me ask you, let's use disciplinary actions as an example. I take it your point is that if someone is being disciplined because they come in five minutes late day after day, that that's just not relevant. But how would you describe something that is broad enough to cover everything that is potentially relevant if you were to rewrite, let's just say, that portion of it, what would you say? What would you have the injunction say? That, you know, if there's any charges or complaints of racial or immigration problems or profiling issues, those can be and should be forwarded to and, you know, monitored and all the rest. But without being narrowly tailored to. But who decides? Let's say there's a complaint of excessive force and it's unclear at the beginning whether it's alleged to be or turns out to be racially or national origin focused in some way. Where would that fall and how would you word it? It definitely needs to be narrower than all disciplinary actions in all patrol functions and all criminal, civil and administrative claims. It has to be narrowed or that are or could be related. You know, it depends on how the complaint comes about as to how you would word the to look at every policy, every function, every operation. The monitor and the plaintiffs are supposed to oversee all operations of all special operations, not just. What page of the injunction are we talking about now? I'm sorry. I didn't get that. What I'm wondering is what happens. I understand that they're collecting the information. What are they allowed to do with it, the monitors and the plaintiffs and so on? With these complaints that you're saying go too far, what are they doing with these? It says the monitor is authorized to assess disciplinary outcomes for any violations of departmental policies and whether the deputies are subject to repeated misconduct complaints, civil suits or criminal charges, including for off-duty conduct. So there could be a basis for collecting the information to make sure that the reporting of a more narrow category is complete, but perhaps not for evaluating the ones that are. I don't even think it's valid to collect that information since it's not narrowly tailored. This goes way beyond identifying whether individual deputies are violating court's orders or constitutional requirements. It's, again, basically carte blanche for the monitor and the plaintiffs to oversee every aspect of the sheriff's office. Let me ask you a question, if I could. Was there any evidence at all other than the violations that took place on the patrols? That is, was there any evidence about people, officers being off-duty and going out and doing their own thing? Was there any evidence at all in the case on that? No, there's no off-duty evidence. No evidence of off-duty. So what you're saying is the only evidence is of people having their constitutional rights violated by officers on duty, so if they're off-duty, there's no reason to be turning in that they got a traffic ticket, for example. Correct. While they were off-duty. That's correct. You're saying something broader than that. You're saying even with respect to complaints or discipline with regard to patrols, you even relating to traffic stops, for example, you think it should be limited to particular kinds of complaints and discipline dealing with people, with officers on patrol or involved with traffic stops. I think it should be significantly narrower than it is now. Well, that's what Judge Graber was trying to get you to say, how. By keying it, being narrowly tailored to the immigration discrimination. Right. So therefore, the answer to my question is yes. What was your question again? My question was, you're saying that even with respect to officers on patrol and even with respect to officers involved in traffic stops while on patrol, you would still have a considerably narrower coverage than what's there now. That's correct. I see I have one more. What language would you use? I'm sort of gathering with this with Judge Berzon. Specifically, what was the language that you would change in the injunction to make that differentiation? It should be narrowly tailored to immigration or discrimination issues, not. Just tell me. You're giving me the law. Now, tell me what the injunction should have said. It should. All what? It should have said, for example, all complaints and administrative investigations that relate to racial issues or immigration issues, racial profiling, discrimination issues, and narrowly tailored that way, not to all complaints, all civil rights. And you're saying that even with respect to collection. Well, you see, you get into the problem then when you do that. I'm sorry. You get into the problem when you do that is that people in the sheriff's office are going to make the decision whether it applied to racial profiling. But that's the issue. They want the person whose objective making that decision. You can't have the sheriff's office saying, oh, this had nothing to do with racial profiling. He just happened to be Hispanic. You see what I mean? How can you change that wording so that the sheriff isn't making the decision what is or what isn't racially, racial profiling? I think the sheriff has to have some leeway. If the injunction has to be narrowly tailored, as it does, and it's subject to specifically, especially rigorous scrutiny, the sheriff's office has to have some area of judgment in being late for, you know, five minutes every day is not going to be relevant to this particular lawsuit. There has to be a middle ground there. And if there's some problem with a narrowly tailored injunction, as it should be, then we address that down the road. All right. You're over time. My inclination is to give you a couple more minutes, because this is all very important  Thank you, Your Honor. So absent an objection from my colleagues, if you have anything else that you want to say now on any of the other issues? Since Your Honors did not want to talk about the difference between the street patrols Well, we began by saying let's assume that if you want to talk about it for a couple of minutes. I mean, the problem is that there seems to be a substantial amount of evidence in the record dealing with this, not as much evidence. But second of all, the distinction is one that the sheriff's office has created. I mean, from the public's point of view, they're driving around in cars and they're being stopped. And whether the sheriff's office is calling it a saturation patrol or isn't calling it a saturation patrol, the impact is the same and the legal considerations are the same, too. I mean, you can't be saying that it would be okay outside of saturation patrols to stop people for civil immigration violations, right? Of course not, Your Honor. But what I'm saying is on this record, what the court ruled on, what he based his entire findings on were the procedures and the operations plans and the impetus for the saturation patrols. Because those were the most extreme versions. Of course. But at the same time, there were other evidence, specifically the Taylor evidence, which was not limited to the saturation patrols, and evidence of what was happening just before the trial, which was continuing to do this in regular patrols. Well, just before. No, no, no. And the claims that Sheriff Arapaio continued to make about his broad authority and the fact that he said he was training all 900 deputies to do this suggests that there was no limitation in the policy and no limitation in the practice. That was a lot of points that I'd like to hit. Yes. But, okay, the 40 that were arrested before the trial, there was no evidence that those folks were arrested during regular patrols, A. B, all the 40 did not lack state charges. The few that had, that did not have state charges included children. There's no evidence that there's any, that the impetus, the procedures, the targeting was done outside of the immigration patrols. There's just not. And if you're relying on the Taylor statistics, statistics alone don't show discriminatory intent. You have to have basically a pervasive conspiratorial intent to stop Latinos during regular street patrols based on their race, and there isn't that evidence in the record. There's not that evidence for the named plaintiffs, and there's not that evidence for outside of the named plaintiffs. You have statistics is all you have basically. You just, and other than that, the trial judge, the district judge, used the procedures, the operations plans, the targeting impetus for the saturation patrols, the immigration investigations, and assumed that that was going to apply across the board to regular street patrols without evidence of that. Okay. We will give you some rebuttal time. Thank you. Thank you very much. Thank you very much. Good morning. May it please the Court, Stanley Young for the plaintiffs and appellees. With me at council table are Cecilia Wong and Jorge Castillo. Thank you again to the Court for its accommodation on the schedule issue. I greatly appreciate that. I will start with the data collection issue and the scope of the injunction was the subject of much of the discussion. Well, it seems to me that there might be a difference between data collection and what you do with the data. Yes. Yes, Your Honor. And let me turn to paragraph 136 of the Court's supplemental permanent injunction, which is on ER052. And it states what the monitor will do with this data. In conducting the outcome assessments, the monitor should measure not only the MCSO's progress in implementing the provisions of this order, but the effectiveness of the reforms. And there follows a list from A through K of the performance-based metrics and trends that the monitor should consider. Those include in B, data relating to the race and ethnicity of the individual stopped. In C, data related to reasonable suspicion or probable cause. Then you go down to I, and I think you have some of the items that opposing counsel are complaining of. Disciplinary outcomes for any violations of departmental policy. Whether deputies are the subject of repeated misconduct complaints. Those items are here. Counsel, I have a question about that part. Why shouldn't the disciplinary actions exclude those kinds of disciplinary actions that are manifestly not related to the issues in this case? And the example I gave was someone who just sleeps in too late and clocks in five minutes late every day. That doesn't show anything about the issues in this case. Why should that even be included in the material that's turned over? I understand the issue of putting the decision in the hands of the defendants as to what is or is not manifestly irrelevant. But it seems that there may well be things that just have nothing to do with these issues. Well, I have two basic responses. One, it's reasonable. And, two, it's been admitted to be reasonable. First, it's reasonable because even the racist e-mails, for example, that were sent within the department were the subject of inadequate disciplinary process and measures. The district court explicitly found that that lack of discipline was a cause of the constitutional violations here. Yet they fall outside the any sort of patrol. They don't relate to patrols at all. They relate to basic. I think you're misunderstanding my question. The issue for me is turning over information about disciplinary actions that have been taken but that are about things that are unrelated to this lawsuit, such as someone who, well, I mean, lateness is an obvious one where it doesn't really say anything about the quality of the person's performance when they're at work or, you know, someone who takes an unauthorized day off to go to their cousin's wedding or whatever it is. So that's my concern, not the question of is it related to a patrol or not related to a patrol. Yes, Your Honor. The information system, the early information system items, which include disciplinary complaints, et cetera, disciplinary actions, all of those are part of the package that, in fact, the parties agreed would be necessary and appropriate to remedy the problem. If you look at... I'm having trouble that the parties agreed. You really can't call this a consent. And the judge didn't call it a consent order. And I've tried to figure out the objections. I've read the entire order. I've gone to the record. And in your brief, you take this as a consent order almost. But there were objections. And I don't think that you can say that the opposition is now tied to that order when the judge specifically said they weren't going to be tied to the order. Isn't that true? There were objections to particular things. And I would point the Court to DSER 76 and 77, which are... Yeah, with the red line, it's very hard to read. Yes. Well, I've done my best with it. And I've looked at it. Yes. Well, I'll point to what was the proposed, the jointly proposed order. And I agree it was not a consent decree. But where the defendants objected, they objected. There was a blanket reservation at the end. But we believe that that's not sufficient. But look at paragraph A of 86 on DSER 076. It says, And if you go to N, O, and P on DSER 77, the EIS shall collect all disciplinary action against employees, all nondisciplinary corrective action required of employees, all awards... What page are we on now? I'm sorry? What paragraph are you reading?  Okay. DSER 076 and DSER 077. And where is that in the final order? In the final order, it is paragraph 75, which appears at ER 034. So the items that... You're saying that this argument has been waived? It has been waived. But more importantly, it shows that it's reasonable for a system like this, which is designed to remedy the harms and the injuries that occurred here, to include  Well, that doesn't follow. That doesn't follow. Just because the party has given up the right to argue about it doesn't make it reasonable per se. Well, this is — there's a lot of — there's a lot of research that's gone into EIS systems. I do point to the consent decrees, which are consent decrees, which collect this sort of information. There's a lot of collective wisdom, which was agreed to below, that says that in order to effectively do this... This whole section is not about the monitor, right? It's about the MS — MCSO developing the system for itself. Yes. But that — the information collected through that system is available to the monitor, and the monitor... All right. And then after the — this is what I want you to know and ask before. After it's available, what happens to it? I understand they can look at it. Then what? And the monitor can look at it. The plaintiffs can look at it. It's available to the monitor to determine whether the particular injunctions that the district court issued have been complied with. And not to — the representation was made that the monitor has the authority to review every discipline, including ones that have nothing to do with this subject matter, and get involved in some fashion. Is that true or not true? That would be included in paragraph 136I of the court's supplemental injunction order. And the reason for that is, as I discussed earlier, is that disciplinary outcomes can be relevant. It's not necessarily that the monitor will do anything if the deputy is five minutes late to work. In fact, the prelude to paragraph 136 suggests that something that's unrelated to the basic purpose of this injunctive order is not going to be the subject of the monitor's activity. But I think that, as the parties acknowledged and as people who designed these systems would tell you, that breadth of collection of data and consideration of data is necessary, and to — It may be necessary, but it may not be constitutional. Let me ask you, is there any evidence — I didn't find any. I've read the record, I think, carefully. I found no evidence where the judge was relying upon anything the officers did other than when they were on duty, carrying out their responsibilities as they saw them. Is that correct? I don't know that that's true, Your Honor. For example, the racist e-mails that were passed around, some of those were sent to personal home e-mail addresses. Some of them may have been sent outside of work. I think some of the testimony was that they were considered to be, you know, outside the scope of the work at issue. But they show attitudes that are precisely relevant to the issues that were violations in this case. They never committed a violation other than while on duty, an actual violation to any of the class. Well, the violations, that is true. But the discipline issues that would arise when someone sends a joke — a joke e-mail that derides people based on their ethnicity is related to the violations here, even if it occurs off-duty. Is there — Even though it's — see, that's the problem I'm having with it. He wants everything, whether they're on duty or off-duty, any violation of department policy. I mean, your shoes weren't shined. That has to go to the monitor. There's absolutely nothing in the record that shows to me that that should be connected other than you say it'd be a good idea because it'd be nice. But we have to take a look at whether or not the Constitution allows it. The Constitution allows it because, as Milliken v. Bradley and Swan v. Charlotte say, the prior order of the Court has been violated. The discretion of the district court is broad. I think that this Court should pay attention to the long years of experience that the district court has had in dealing with this agency. Well, I gather what happened here was that there — that because they appear in the record that consent decrees regarding other police organizations were sort of used as models. Is that accurate? Both parties used them as models during the course of drafting the reports. And in some instances, the underlying litigation was in fact broader. I'm sorry, Your Honor? In some instances, the underlying litigation may have in fact been broader. Broader than the — Than this litigation, which was targeted at, you know, a set of problems and not at the complete operations even of the operative officers. I think that some of the other cases where consent decrees were entered into did involve other people. I mean, it wasn't about excessive force, and it wasn't about — I mean, it just wasn't about a lot of other things. Yes, Your Honor.  But as the record shows, as far as we've been — But just to be more specific about this, because I still haven't found the — you're pointing me at I on page 53 as being essentially the broadest provision. But I was told by your opposing counsel, and I didn't ask her to show me exactly where, that there is something in this order that essentially gives the monitor the authority to review individual disciplinary decisions and overrule them or bring them to the court's attention or something. Is there any such thing in this? I mean, I read this as being a data collection shall take into account the basic performance-based metrics and trends in coming to an overall conclusion about whether or not the reforms were effective, but not to get involved on an individual disciplinary basis on any individual disciplinary decisions. Yes. Is there something that does that? No, Your Honor. Not that I'm aware of. That's just not true. I believe that's inaccurate. My understanding is, based on paragraph 136 and the other provisions relating to the monitor, is that the monitor is to monitor and advise the court about enforcement of this order, which relates to racial equality. But not to review individual disciplinary decisions and get involved. That's correct. Okay. I think that is an over-exaggeration of the district court's order. I would like to spend some time on the jural entity issue, unless the Court has issues Why should we care about this? On either side. I think the Court should care about this. I understand the jural one, but I'm not sure I understand your point, that you're saying that off-duty conduct, off-duty conduct, something that happened in my home at night, if there's something that comes up, the monitor gets that. Look at it, but not necessarily act on it. If someone does something off- But that's not the point. That's not the point. The point is, should this injunction even cover such things that are not involved in the actual constitutional violation? That's the issue. Why should we open the door to things that aren't even involved in this case on the grounds that they might show that they sent an e-mail to their friend that they now the monitor wants to take? Why should it extend that far? This Court and the Supreme Court have held consistently that where there's a violation, and particularly where there's a prior violation of a court order, that injunctions can cover things that would not be constitutionally required. Well, that's true, but there are also limits on that, right? There are limits, and the district court here has not reached those limits. All of these measures that we've been discussing are tied directly to the- I mean, isn't this slightly the tail wagging the dog to everything else? I mean, would you really care very much if paragraph KJ, which says including for off-duty conduct, wasn't there? I think that it would work to impair the effectiveness of the monitor's work. Those items of information were inserted in order to allow the monitor to do the monitor's work. J, for example, relates to misconduct complaints, civil suits or criminal charges, including for off-duty conduct. It could be quite relevant to the monitor to know that someone has sued an officer for racial discrimination, even if it's not connected to work. So, again, I think that these are well within the discretion of the district court. On the jural entity issue, the key on the prior appeal was whether there was jurisdiction. And I recognize there the injunction will stay in place, but I think for the Court's own efficient, effective operation, this is an issue that should be of concern. As Judge Wallace stated in Hendricks v. Bank of America, where an issue is necessary to ensure meaningful review of the order that was before the court on the interlocutory appeal, there is jurisdiction. Well, let me ask you something. I mean, I gather the position, the current law in Arizona now is that essentially the police department can't be sued separately because it's really the county. Right? You did sue the county. And the county went out because we said, why don't we just substitute? Couldn't the district court just substitute in the county? Because we now know that that the county is the police department. The district court could do that, and he, in fact, has said that he could do that if necessary. The district court might have done that had this issue been raised after the Braylor decision in the district court. But it wasn't, and it wasn't in this Court either. And because that I think is the main problem of your point, is that it wasn't raised. And even in our case, in the prior case, we pointed out all of these issues that can come up and should come up. And if it was ever going to come up, they were warned when they had the opinion on our preliminary injunction. And yet there was no petition for rehearing. There was no bringing up. I don't see how whatever it is, and I am having problems trying to decide what the Arizona courts can end up with and what it means. But whatever it is, it seems to me it's waived by that, by the failure to bring it up at that time. I take it you would agree with that. Yes, Your Honor. I do agree with it. It's just like the jurisdiction issue and the venue issue in the Hendricks case or the Younger abstention issue in the Meredith case. Those were issues that were necessary to ensure meaningful review. How can you enjoin the NCSO if they're not a jural entity? Well, the injunction in the earlier appeal was a preliminary injunction against the NCSO. If they were to raise that issue that they could not be sued and therefore could not be enjoined, it should have been raised there and there was jurisdiction under Hendricks and Meredith. Your Honors, do you have further questions about any of the issues? I don't want to take up your time unnecessarily. I have just one more question. I have to go back and reread the brief. You continue to refer to this order as a consent decree. There was a lot of objections made. The record is not clear, but it seems to me just looking at the record, they made a lot of objections to that decree. Judge Snow was trying to get them to cooperate, but he said, I'm not going to hold you to anything. I don't see how in fairness we can say that they have agreed with this order and therefore they can't object. It just strikes me in reading the opinion of what Judge Snow was trying to do as he moved it along was to get everybody to sit down, but he wasn't going to take away any of their rights to object either in that court or before us. Can you really refer to this as a consent decree? Well, I don't refer to it as a consent decree. The provisions were ordered by the Court after contest. What I am referring to, and this goes to both waiver and reasonableness, is that the while they objected to certain provisions, they agreed with others. And I would point the Court to SCR 1469. But they only agreed to others after they had already been generally enjoined. In other words, there was they didn't agree at all to the original more general injunction, right? Well, at least initially at that time, they did not agree to liability. So to that extent, they didn't, although they do now. Or to the terms of the seven or eight things that were laid out in general terms in the original injunction. Well, I do want to refer the Court to the joint brief that the parties filed. The parties didn't just file a draft of an order. They filed a pleading in which they argued. But that was after. This is what I'm trying to clarify. That was after the district judge had already issued an injunction. He had issued the earlier injunction that was very general, along with his fighting liability. Right. So this was essentially, and then he asked the parties to sit down and flesh out that provision, but the defendants never agreed that there should be any injunction or that it should cover the things that he covered in the original provision. I would point to SCR 1469, which is the brief that the parties jointly filed, where it was stated the parties, quote, largely agreed, end quote, on what data should be collected in the EIS system. Given the fact that the judge had already issued an injunction requiring him to do certain things, right? Well, of course. They would have preferred not to have any injunction and not to have any liability at all. Right. But once the liability was found and they were given the chance to craft an injunction This is what happened in Lewis v. Casey. And the Supreme Court in Lewis v. Casey actually, referring back to the Bounds case, endorsed this procedure, which is once liability is found, the court should ask the State or the agency for its thoughts on how to remedy the constitutional violation. Well, that's not true, but I don't know why that leads to any waivers. And what specifically – I guess it would help me to know, what specific provisions that are in dispute would you say there's a waiver with regard to? The one I just discussed is a good example. The items of information to be collected in the early information system. Because that was not objected to. It was not objected to. It's in black font. Well, the parts that are in black were not objected to. Right. I understand that. There were some items, but largely, for the most part, they were – But there was a big chunk of red right around there, as I recall. There are some – there is some red, but if you look at, again, DSCR 76 and 77, most of those items, including all misconduct complaints, all disciplinary action, all nondisciplinary correction action, all awards and commendations, that's in black. That was agreed to. And that just shows that everyone in the district court who is thinking about how to remedy these constitutional violations agreed that these were reasonable provisions necessary to address those harms.  You have exhausted your time. Thank you very much, Your Honor. Thank you very much, Your Honors. We will give you, Ms. Gilbride, say two minutes. I don't need very much time, Your Honor. Can you answer my question, i.e., you had represented that there was a provision in this injunction that allowed the monitor to get involved in individual disciplinary decisions other than simply collecting information. Is that true or not? No, I did not. I did not intend to. Well, you did say that. I don't – if that's the way it was taken, I apologize. I didn't mean to, to – So you're focusing on basically this I and J. That's what you're concerned about. It's more than I and J, Your Honor. And we did object, and we – I'm citing you to my reply brief on page 26. We objected to all plaintiffs' proposed language referencing things like the appointment of a monitor at all, training not directed to constitutional issues, training on misconduct investigations, how often supervisors discuss deputies' stops and what those conversations should include, gathering overbroad data – and I just lost my connection here – but during the discussion, and we've cited here DSER, 1153, 1190, 1194, 1197, these are the areas, these are the transcripts where our – But now you're – you see, now you're moving over, because in your reply brief and in your argument until now, you've been quite focused on the particular provisions that go substantively beyond the lawsuit here. Correct. And now you're bringing in the appointment of the monitor and a bunch of other things. Now, why – I have a hard time understanding why those are not there. No, I'm sorry. The argument is that we objected to all of those things and therefore did not waive – we didn't agree to them as – as counsel is suggesting now. Well, I understand that. Yeah. But I'm trying to get you to some point with regard to this issue, i.e., the substantive overbreadth, what provisions you're talking about. And I said I and J, and you said no, not just I and J. Okay. Well, let me – that was what I had in my – just one moment. I apologize. The things that I read off in my opening argument are the substantive things that we think are overbroad, and those are – Including the appointment of the monitor? Are you asking us now to review the appointment of the monitor? I'm sorry. Say it again. Including the appointment of the monitor at all? No. We objected to that at the beginning, you know. And we agree, since we have not appealed the saturation patrol issues, then of course I guess the monitor would be an appropriate discretionary thing that the trial judge could order with respect to the saturation patrols, the immigration investigations and such. We don't – we think it's overbroad as it refers to the regular patrols where there's been no named plaintiff who was racially profiled and stopped due to race during a regular patrol, and no other evidence of intentional discrimination during a regular patrol, racial profiling. Counsel indicated that measuring MCSO's progress in complying with the order was a reasonable reason to allow the injunction to be overbroad and allow the collection of all kinds of data that had nothing to do with discrimination or immigration, and we would dispute that. It's just not reasonable, and it doesn't show anything about – it's not narrowly tailored to redress discrimination or immigration constitutional violations. You object, for example, to – I'm looking at page 28 of your opening briefs – that you have to provide 12 hours of training on racial profiling to all deputies and posse members within 240 days. You say that's overbroad. That's – yeah. And that's only if you agree with the regular – there's been no constitutional violation with respect to regular patrols. Even if you did, I mean, who's to say which of the deputies and posse members are going to be doing that? I'm fine. You know, I can abandon that. But with everything else that we mentioned in the opening argument, all of the disciplinary, all the civil violations, all the administrative – Well, what I'm pointing out is that I have read the reply brief and your argument as pulling back with regard to the subjection substantially, so that the long list that is in your opening brief doesn't – doesn't seem to be the operative one as to what you're actually complaining about. I would definitely rely on the reply brief, Your Honor, which is more specific and more direct to our – our objections. All right. Thank you very much. Thank you very much, Your Honor. Thank all of you for helpful arguments in the difficult case. The case of Melendrez v. Arapaio is submitted, and we are adjourned. Thank you.
judges: Wallace, Graber and Berzon, Circuit Judges